798 A.2d 1139

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Victoria G. RUFFIN.

No. 15, Sept. Term, 2001.

Court of Appeals of Maryland.

May 16, 2002.

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Asst. Bar Counsel for Atty. Grievance Com'n of Maryland, for petitioner.

No argument on behalf of respondent.

Argued Before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

This is a reciprocal discipline action arising out of disciplinary proceedings initiated in Arizona, where Victoria G. Ruffin, the respondent, a member of that bar, exclusively practiced law. The Arizona Disciplinary Commission having concluded in those proceedings that she violated certain of the Arizona Rules pertaining to professional conduct, as prescribed in Rule 42 of the Rules of the Supreme Court of Arizona, "particularly ER 1.1 (competence), ER 3.1 (meritorious claims and contentions), ER 4.4 (respect for rights of third persons), ER 8.4(d) (misconduct prejudicial to the administration of justice), and Rule 51(e) (willful violation of a rule), (h) (failure to furnish information), (i) (refusal to cooperate) and (k) (willful violation of a court order)," the respondent was suspended from the practice of law in that State. Bar Counsel, acting at the

direction of the Review Board, see Maryland Rule 16–709.a,[1] and premised on the acts and omissions of the respondent that were determined by the Arizona disciplinary proceedings to constitute misconduct, charged the respondent with engaging in misconduct as defined in Maryland Rule 16–701.k[2] specifically, with violating the Maryland counterparts of the Arizona Rules she was found to have violated, see Maryland Rules of Professional Conduct, Maryland Rule 16–812.[3]

---

1. This Court adopted on November 30, 2000, effective July 1, 2001, extensive revisions to Chapter 7 of Title 16, Discipline and Inactive Status of Attorneys. These proceedings commenced prior to July 1, 2001 and, so, the rules governing their initiation are those in effect as of June 30, 2001. At that time, Maryland Rule 16–709.a provided:

 "a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

 After July 1, 2001, Bar Counsel still must obtain permission to file a petition for disciplinary action in the Court of Appeals, but now from the petitioner, see Maryland Rule 16–751(a), but his decision to file charges against an attorney with the petitioner is informed by four (4) considerations, none of which is applicable here. Maryland Rule 16–741(a)(1).

2. Maryland Rule 16–701.k, as relevant, states:

 "Misconduct.—'Misconduct' means an act or omission by an attorney, individually or in concert with any other person or persons which violates the Maryland Rules of Professional Conduct, as adopted by Rule 16–812, whether or not the act or omission occurred in the course of an attorney-client relationship."

 Effective July 1, 2001, the definition of "professional misconduct" is codified at Maryland Rule 16–701(i), which adopts "the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812" and "includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

3. Rule 1.1 Competence

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

 Rule 3.1 Meritorious Claims and Contentions

 A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification of the Arizona Rules she was found to have violated or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

 Rule 4.4 Respect for Rights of Third Persons

We referred the case to the Honorable Joseph P. Manck of the Circuit Court for Anne Arundel County to make findings of fact and draw conclusions of law. When, after reasonable efforts to do so, the respondent could not be personally served, service was made, pursuant to Maryland Rule 16–811.g, on the Treasurer of the Clients' Security Trust Fund, who subsequently certified his compliance with the requirement that he mail the pleadings and the court order to the respondent's last known address. Thereafter, an order of default having been entered against the respondent, who did not move to vacate it, the hearing court held a hearing at which only the petitioner appeared and participated. Following the hearing, the hearing court made findings of fact and drew conclusions of law, as follows:

"Findings of Fact

"1. The Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 26, 1985.

"2. On April 4, 1997, the Respondent was decertified for nonpayment of the annual assessment by the Clients' Security Trust Fund of the Bar of Maryland (CSTF). According to a Memorandum dated November 29, 2001, from Sandra Gipe,

---

(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

\* · \* \* \*

Rule 8.4 Misconduct
It is professional misconduct for a lawyer to:

\* \* \* \*

(d) engage in conduct that is prejudicial to the administration of justice....

Rule 8.1 Bar Admission and Disciplinary Matters
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

CSTF Membership Manager, the Respondent's name should not have been included on a decertification list sent to the Court of Appeals. The Respondent had applied for inactive/retired status, and her status should have been changed effective July 1, 1996. Ms. Gipe's Memorandum indicates CSTF has taken steps to correct the Respondent's erroneous decertification by notifying the Court of Appeals.

"3. The Respondent was admitted to the State Bar of Arizona in October 1992. In May 1996, she was suspended from practicing law in Arizona for nonpayment of Bar dues.

"4. Pursuant to a Judgment and Order of the Supreme Court of Arizona dated May 30, 1999 . . ., the Respondent was suspended from the practice of law in Arizona for a period of seven months, effective thirty (30) days from the date of the Judgment and Order, 'for conduct in violation of her duties and obligations as a lawyer.'

"5. In a report prepared by the Disciplinary Commission of the Supreme Court of Arizona, appended to that Court's Judgment and Order dated March 30, 1999, the Disciplinary Commission found that the respondent filed a frivolous motion to dismiss while representing a defendant in a civil case and that she failed to withdraw the motion when requested to do so by opposing counsel.

"6. The Respondent did not answer the disciplinary complaint filed in Arizona, and she did not otherwise appear or participate in any stage of the Arizona disciplinary proceeding.

"7. The Disciplinary Commission in Arizona concluded that the Respondent's conduct violated Rule 42 of the Rules of the Supreme Court of Arizona (Arizona Rules of Professional Conduct), 'particularly ER 1.1 (competence), ER 3.1 (meritorious claims and contentions), ER 4.4 (respect for rights of third persons), ER 8.4(d) (misconduct prejudicial to the administration of justice),' and that the Respondent further violated Arizona Supreme Court 'Rule 51(e) (willful violation of a rule), (h) (failure to furnish information), (i) (refusal to cooperate) and (k) (willful violation of a court order).'

"8. The Disciplinary Commission in Arizona cited several aggravating factors in its report to the Supreme Court of Arizona and observed that the Respondent 'appears to have abandoned the practice of law.'

"9. The Supreme Court of Arizona, by its Judgment and Order dated March 30, 1999, adopted the findings and conclusions in the report of that Court's Disciplinary Commission.

"10. The Respondent has not filed an application for reinstatement from her suspension in Arizona.

"Conclusions of Law

"1. The Respondent is an 'attorney' as defined in Maryland Rule 16–701a and she is subject to the disciplinary authority of this State pursuant to Maryland Rule of Professional Conduct 8.5(a) for any violation of the Maryland Rules of Professional Conduct 'in this or any other jurisdiction.'

"2. Pursuant to Maryland Rule 16–710e, '[a] final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule.'

"3 This Court concludes that the Respondent violated the ... Maryland Rules of Professional Conduct [with which she was charged by Bar Counsel] corresponding to the violations found in the Arizona disciplinary proceeding...."

No exceptions have been filed to the findings of fact and conclusions of law either by the petitioner or the respondent, who did not appear in these proceedings. The petitioner has, however, filed its recommendation for sanction. It is that the respondent be indefinitely suspended from the practice of law. In support of the recommendation, the petitioner asserts:

"The Respondent remains suspended in Arizona. Bar Counsel has been unable to locate her in connection with this disciplinary proceeding. Since abandoning her Arizona practice, the Respondent has taken no steps to regain her eligibility to practice law, either in Arizona or in Maryland.

Under the circumstances, Petitioner recommends that the Respondent be indefinitely suspended."

 Ordinarily, when there are no exceptions taken by either party and the appropriateness of the proceedings or the charges has not been challenged, all that would remain for the Court's determination would be to decide what sanction to impose. In this case, the record establishes that, when the disciplinary proceedings were initiated in Arizona, the respondent was not decertified for failure to pay the CSTF assessment, but rather was on retired/inactive status pursuant to Maryland Rule 16–811.f.2.[4] The threshold question, therefore, is whether an attorney, voluntarily under that status, who applied for that status prior to the pendency of any disciplinary proceedings or complaints, falls within the scope of Maryland Rule 8.5, addressing the jurisdiction of this Court to discipline attorneys, whether Maryland or out-of-state attorneys,[5] and, for purposes of reciprocal discipline, is an attorney, as defined by Maryland Rule 16–701.a.

 For purposes of the attorney discipline system in this State, an attorney is

---

**4.** To be sure, the petitioner alleged that the respondent was decertified and the records of the Clients Security Trust Fund bore that out when the Petition for Disciplinary action was filed. The hearing court, however, reported that the action of decertifying the respondent was a mistake, that the respondent had applied for inactive/retired status, which was apparently granted. Thus, it is the latter status that is pertinent to our decision in this case.

**5.** Maryland Rule 8.5 provides:
"(a) A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for a violation of these rules in this or any other jurisdiction.
"(b) A lawyer not admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for conduct that constitutes a violation of these Rules and that:
"(1) involves the practice of law in this State by that lawyer, or.
"(2) involves that lawyer holding himself or herself out as practicing law in this State, or.
"(3) involves the practice of law in this State by another lawyer over whom that lawyer has the obligation of supervision or control."

"a person admitted by the Court of Appeals to practice law in this State. For purposes of discipline or inactive status, the term also includes a person not admitted by the Court of Appeals who engages in the practice of law in this State, or who holds himself or herself out as practicing law in this State, or who has the obligation of supervision or control over another lawyer who engages in the practice of law in this State."

Maryland Rule 16–701.a. Rule 8.5 provides:

"(a) A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for a violation of these rules in this or any other jurisdiction.

"(b) A lawyer not admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State for conduct that constitutes a violation of these Rules and that:

"(1) involves the practice of law in this State by that lawyer, or

"(2) involves that lawyer holding himself or herself out as practicing law in this State, or

"(3) involves the practice of law in this State by another lawyer over whom that lawyer has the obligation of supervision or control."

The respondent has been admitted by this Court to practice in this State-as we have seen, on June 26, 1985—and, apparently, did, in fact practice here for a time. It was not until 1992 that she was admitted to practice in the State of Arizona. Of importance to this inquiry is that it was in 1996, prior to the initiation or adjudication of any disciplinary charges in Arizona, that the respondent applied for inactive/retired status, a status that is recognized and provided for in the Maryland Rules.

Subsection f.2 of Maryland Rule 16–811, the CSTF rule, authorizes the trustees to "provide in their regulations reasonable and uniform deadline dates for receipt of payments of assessments or applications for change to inactive/retired sta-

tus." It provides further for the conditions under which an attorney in such status may practice law:

> "without payment to the trust fund if (A) the lawyer is on inactive/retired status solely as a result of having been approved for that status by the trustees and not as a result of any action against the attorney pursuant to Title 16, Chapter 700 of these Rules and (B) the lawyer's practice is limited to representing clients without compensation, other than reimbursement of reasonable and necessary expenses, as part of the lawyer's participation in a legal services or pro bono publico program sponsored or supported by a local Bar Association, the Maryland State Bar Association, an affiliated bar foundation, or the Maryland Legal Services Corporation."

Regulations 6. and 7, promulgated pursuant to the Rule, implement the Rule:

> "6. The Fund shall maintain a category of 'Retired/Inactive' lawyers, who shall not be charged assessments or late charges for any fiscal year after they are approved for such category. After transfer to such category, any such lawyer may be reinstated to active practice upon written notice to the Fund of his intent to resume active practice and upon payment to the Fund of all assessments due for the then current fiscal year.

> "7. A lawyer seeking to change from active practice to 'Retired/Inactive" status with the Fund shall furnish to the Fund written evidence in form satisfactory to the Fund of his cessation of all active practice, directory listings, etc. Unless such written evidence is received by the Fund by August 31 of such fiscal year, such lawyer shall pay full assessments for the fiscal year in which such change occurs and shall pay in addition any and all sums due the Fund for prior assessments, late charges, etc."

The Rule and the regulations pursuant to it have nothing at all to do with discipline or sanctions. The Rule provides a mechanism whereby an attorney may be relieved of the obligation of paying the assessment required of all practicing

attorneys in order to be able to fulfill the purpose for which the CSTF was established: "to maintain the integrity and protect the good name of the legal profession by reimbursing, to the extent authorized by ... Rule and deemed proper and reasonable by the trustees, losses caused by defalcations of members of the Bar of the State of Maryland or out-of-state attorneys authorized to practice in this State, ... acting either as attorneys or as fiduciaries...." There is a price exacted for being placed on inactive/retired status and thereby being relieved of the financial obligation inherent in the assessment-the attorney is prohibited from practicing law for a living; his or her practice of law is limited to representation without compensation, except reasonable and necessary expenses, as a participant in a legal services or pro bono publico program.[6] Maryland Rule 16–811.f.1. Because the status is neither discipline nor a sanction, nor, for that matter, associated with either, reinstatement to active practice may be quickly obtained, with written notice of the attorney's intention to resume practice and the payment of the assessment due for the then current year. Regulation 6.

This Court's Disciplinary Rules applicable to this case recognized "inactive" status, as well. Chapter 700 of Title 16 is captioned *"Discipline and Inactive Status of Attorneys,* thus suggesting that "inactive" status is akin to, or in the same category as, discipline. This is confirmed by Rule 16–711 which pertained to "Disposition of Charges." Subsection b.4 of that Rule, dealing with review by the Court of Appeals, includes "placing attorney on an inactive status" as one of the options available to the Court for disposing of disciplinary charges. Rule 16–713 is captioned *"Effect of Discipline, Inactive Status, and Resignation."* Subsection a, applicable to attorneys admitted to practice by this Court provides, as relevant:

---

6. The pro bono or the legal services could be supported or sponsored by a local bar association, as defined in Maryland Rule 16–1701(b), the Maryland State Bar Association, an affiliated foundation or the Maryland Legal Services Corporation.

"a. *Attorney admitted by the Court of Appeals.* 1. Duty of Clerk. With regard to attorney admitted by the Court of Appeals to practice law, when an order suspending or disbarring the attorney from the practice of law, placing the attorney on inactive status, or accepting the attorney's resignation from the practice of law in this State becomes effective, the Clerk of the Court of Appeals forthwith shall strike the name of the attorney from the register of attorneys in that Court.

"2. Effect. the attorney may not practice law after entry of an order disbarring the attorney, placing the attorney on inactive status, or accepting the attorney's resignation or during the period the attorney, by order, is suspended. Upon expiration of the period of suspension specified in the order, the Clerk of the Court of Appeals shall replace the name of the attorney upon the register of attorneys in that Court, and the attorney may practice law, only after (a) the attorney files with the Bar Counsel a verified statement that the attorney has complied in all respects with the terms of the suspension and (b) Bar Counsel notifies the Clerk that the statement has been filed and Bar Counsel is satisfied that the attorney has complied with the terms of the suspension."

Significantly, the parallel provision relating to attorneys not admitted by the Court of Appeals does not reference "inactive" status. See Rule 16–713.b. Also significant, Rule 16–714 includes "inactive" as one of the statuses for the termination or modification of which a petition to the Court of Appeals is required to be filed.

The present Maryland Rules further confirm the nature of "inactive" status and how this Court views attorneys placed in that status. Like former Rule 16–714, Rule 16–759 includes inactive status as one of the Court's disposition options. *See also* Rule 16–760(g)(2) ("Indefinite Suspension or Inactive Status. An order of the Court of Appeals that suspends the respondent from the practice of law indefinitely, or places the respondent on inactive status, may permit the respondent to apply for reinstatement in accordance with Rule 16–781 not

earlier than a specified period of time after the effective date of the order."). Maryland Rule 16–773(a)[7] pertaining to reciprocal discipline, includes being placed on inactive status, based on incapacity, in another jurisdiction, among the occurrences of which a Maryland attorney is required promptly to inform Bar Counsel. Rule 16–773(b) imposes on Bar Counsel the obligation to act when he receives information that a Maryland attorney has been disciplined or placed on inactive status in another jurisdiction. He must "obtain a certified copy of the disciplinary or remedial order and file it with a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751 [pertaining to the commencement of proceedings], and shall serve copies of the petition and order upon the attorney in accordance with Rule 16–753." The Court of Appeals is required, by Maryland Rule 16–773(c), once the petition for disciplinary or remedial action has been filed with it, to order "that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed."

■ Our rules also now prescribe a procedure whereby an attorney may consent to being placed on inactive status. Maryland Rule 16–772(b) provides:

"(1) Joint Petition. An attorney may consent to placement on inactive status by joining with Bar Counsel in a petition for an order placing the attorney on inactive status. The petition shall be signed by the attorney and Bar Counsel and filed in the Court of Appeals. The petition shall state whether the inactive status should be indefinite or until the occurrence of a specified event and shall set forth any conditions that the parties agree should be imposed.

---

7. It provides:

"An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status."

"(2) Affidavit Required. A joint petition filed under subsection (c)(1) of this Rule shall be accompanied by an affidavit by the attorney that certifies that the attorney:

"(A) consents to the placement on inactive status;

"(B) gives the consent freely and voluntarily without coercion or duress;

"(C) is currently incapacitated and unable to render adequate legal service;

"(D) knows that if a hearing were to be held, Bar Counsel would have the burden of proving by clear and convincing evidence that the attorney is so incapacitated as to require the attorney to be placed on inactive status;

"(E) understands that being placed on inactive status, if ordered by the Court of Appeals, terminates the attorney's privilege to practice law in this State until otherwise ordered by the Court;

"(F) agrees to comply with Rule 16–760 and any conditions stated in the petition that the Court of Appeals may impose;

"(G) understands that the attorney may not be reinstated to practice law unless the attorney is able to prove by a preponderance of the evidence that the attorney has regained the ability to render adequate legal services, that inactive status should be terminated, and that the attorney should be reinstated to active practice;

"(H) has disclosed to Bar Counsel the name of every physician, other health care provider, and health care facility by whom or at which the attorney has been examined, evaluated, or treated; and

"(I) has furnished Bar Counsel with written consent to the release of such health care information and records as Bar Counsel has requested and waived any privilege as to such information and records."

This Rule, by its plain language, makes clear that inactive status follows from, and contemplates, incapacity and inability to practice law adequately. For that reason, reinstatement is not easily achieved; in fact, it requires the attorney to prove,

by a preponderance of the evidence, that the incapacity has ceased and that he or she is able once again to render adequate legal services.

 While the respondent was on inactive status in Maryland at the relevant time, that status was not pursuant to, or the result of, proceedings under Chapter 700 of Title 16. Rather, the respondent was placed on inactive status, at her request, by the trustees of the CSTF, pursuant to Maryland Rule 16–811.f and the regulations promulgated to implement that aspect of the rule. As we have seen, that status is a voluntary one—the attorney ceases the practice of law for profit in return for not being required to pay the annual assessment required of active attorneys. Upon written notice and the payment of the assessment for the current year, inactive status may be terminated and the attorney may return to the active practice for profit. And, as this case seems to demonstrate, because it applies only in Maryland, an attorney on voluntary inactive/retired status in Maryland could practice in another State where admitted and where he or she has not placed any voluntary restraints on practice, with the possibility, necessarily, of engaging in misconduct which may result in disciplinary proceedings and the imposition of sanctions. Inactive status in the sense contemplated by Rule 16–811, thus, does not, and, indeed, cannot be expected to, insulate an attorney from reciprocal discipline resulting from his or her misconduct in another State. In any event, this Court has held that an attorney who has been admitted to the bar of this State and has not tendered a resignation remains subject to the disciplinary authority of this Court, notwithstanding being on the inactive list of attorneys, by virtue of failure to pay the Client Security Trust Fund assessment. *Attorney Griev. Comm'n of Maryland v. Shaw,* 354 Md. 636, 647, 732 A.2d 876, 882 (1999).

Turning to the appropriate sanction, the petitioner, as we have seen, seeks the indefinite suspension of the respondent from the practice of law. This sanction is being recommended because it is consistent with the Arizona sanction of a seven

(7) month suspension. Reinstatement to the practice of law of attorneys under a suspension of that length in Arizona may occur only by order of the court. Unlike an indefinite suspension, in Maryland, a suspension for a specified period does not trigger a reapplication process or require Court approval for reinstatement; all that is required is that the attorney certify compliance with the terms of the suspension and Bar Counsel confirms the certification and is satisfied of the truth of the certification. See Maryland 16–713.a.2. Thus, in Maryland, an indefinite suspension is the equivalent of the seven (7) month suspension imposed by Arizona on the respondent in this case.

 We are prone, *see Attorney Griev. Comm'n v. Sabghir*, 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Richardson*, 350 Md. 354, 365–66, 712 A.2d 525, 530–31 (1998), but not required, *see Attorney Griev. Comm'n v. Gittens*, 346 Md. 316, 324, 697 A.2d 83, 87 (1997), to impose the same sanction as that imposed by the state in which the misconduct occurred.[8] Indeed, the Court is duty-bound to assess for itself the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission, *Gittens*, 346 Md. at 326, 697 A.2d at 88,—to look not only to the sanction imposed by the other jurisdiction, but to the particular facts and circumstances of each case, the outcome being dependent upon the latter, but with a view toward

---

**8.** Maryland Rule 16–773(e), which became effective July 1, 2001, sets out circumstances in which reciprocal discipline will not be ordered:
"if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
"(3) the imposition of corresponding discipline would result in grave injustice;
"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or
"(5) the reason for inactive status no longer exists."

consistent dispositions for similar misconduct. *Attorney Griev. Comm'n v. Willcher*, 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995) (quoting *Attorney Griev. Comm'n v. Parsons*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987)); *Attorney Griev. Comm'n v. Saul*, 337 Md. 258, 267–68, 653 A.2d 430, 434–35 (1995). We ordinarily will defer to the sanctioning State when the two States' purpose in disciplining counsel is the same. *Id.* at 327, 697 A.2d at 88. Arizona, like Maryland, views attorney discipline as having as one of its purposes the protection of the public. See *In Re Scholl*, 200 Ariz. 222, 25 P.3d 710, 712 (2001) ("The stated objectives of disciplinary proceedings are: (1) maintenance of the integrity of the profession in the eyes of the public, (2) protection of the public from unethical or incompetent lawyers, and (3) deterrence of other lawyers from engaging in illegal or unprofessional conduct."); *In re Murray*, 159 Ariz. 280, 767 P.2d 1, 3 (1988).

We believe that the sanction imposed by Arizona is an appropriate sanction in this case. Accordingly, the respondent is suspended for seven (7) months, concurrent with the sanction imposed in Arizona. The suspension shall commence thirty days from the date of the filing of this opinion. We do not impose an indefinite suspension because in order to resume the practice of law in Maryland, the respondent must certify to her compliance with the sanction in this State and Bar counsel must attest that the certification is true. That is a sufficient safeguard to assure that, should the respondent seek to resume her practice in Maryland, she will be completely eligible to do so.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST VICTORIA G. RUFFIN.